

## ALEXANDRIA CIRCUIT COURT
18th Judicial Circuit of Virginia

Janece P. Mickens
**Plaintiff**
12837 Rannoch Forest Circle, Bristow, Virginia 20136
703.656.8129

vs.                                                ACTION NO.

Intelligent Decisions for Mr. Zaman Khan, Ms. Theresa Pond and Ms. Susan Mayer
**Defendant**
21145 Beaumeade Circle, Ashburn, Virginia 20147
703.554.1600

### STATEMENT OF CLAIM

**NOW COMES,** Janece P. Mickens, and hereby files this claim against the above named defendant and hereby file this claim against the above named defendants and in support thereof states as follows:

### FACTS

1. Plaintiff, Janece P. Mickens resides at 12837 Rannoch Forest Circle, Bristow, Va. She worked at 21145 Beaumeade Circle, Ashburn, Virginia; from August 8, 2011 until November 30, 2012. At the time of her termination, plaintiff was employed as a Senior Proposal Coordinator. At all relevant times Plaintiff met the definition of an "Employee" under all relevant statutes (**Exhibit A**).

2. Intelligent Decisions Inc., (ID) is a United States privately-owned company that employs approximately 450 employees with $428 million in reported revenue for 2013. It is principally engaged in developing, deploying and maintaining technology solutions by combining professional services and technology to provide an end-to-

end solution to federal agencies, including the Pentagon, the Department of Justice, the Office of Personnel Management, the FBI and the Federal Aviation Administration. Its headquarters is located at 21445 Beaumeade Circle, Ashburn, Virginia. At all relevant times ID met the definition of an "Employer" under all relevant statutes.

3. From April 2012 – November 2012, Susan Mayer qualified as plaintiff's supervisor for (i), having authority to undertake or recommend tangible employment decisions affecting the plaintiff and (ii), directing the plaintiff's daily work activities.

4. On May 21, 2012, plaintiff e-mailed Zaman Khan, Executive Vice President (EVP) of Business Development to discuss her suspicions regarding Mayer reassignment of work to another co-worker that had been previously performed by her (**Exhibit B**).

5. Plaintiff has documented several acts of malice by Mayer including deception, manipulation, intimidation, humiliation, indignation, "trumped-up" accusations (undocumented) of poor performance, inadequate qualifications (constant criticism), degradation and constant torment and subjected plaintiff to distress, fright, depression, sleeplessness, headaches, weight gain and disturbance to psyche that ultimately corroded the entire employment relationship and created an unhealthy imbalance resulting in emotional distress leaving plaintiff feeling threatened, vulnerable and unable to defend herself against recurring actions (**Exhibits C, D, E, F, G, H, I, J, K and L**)

6. Plaintiff was targeted. Other coworkers doing substantially that same work were treated differently and more favorably than plaintiff.

7. On August 14, 2012, Plaintiff requested a meeting with Theresa (Terri) Pond, Vice President, Human Capital Management and Corporate Development and Mayer to discuss the stress she was experiencing in the office environment; along, with the negative impact it had on her ability to approach her work with focus and drive (**Exhibit M**).

8. Plaintiff feared going to work due to the atmosphere generated by Mayer. Using the compliant procedure provided by the respondent, on November 21, 2012, plaintiff filed a formal complaint of Workplace Harassment against Mayer that included several exhibits to support her allegations (**Exhibit N**).

9. On November 25, 2014, Plaintiff contacted Mayer, via email, explaining that she needed to take time away from work; as, she had been suffering anxiety and panic attacks; with feelings of being on the verge of a nervous breakdown (**Exhibit O**).

10. On November 27, 2012, plaintiff's physician prescribed Xanax to treat her symptoms of panic attacks, depression and anxiety and provided her with a medically-excused absence from work (**Exhibit P**).

11. On November 30, 2012, unable to access her work e-mail account from home, plaintiff e-mailed (from her personal yahoo account) Mayer, Khan and Pond explaining that her computer had been locked. With no response after two days she contacted Mr. Harry Martin Jr., President and Chief Executive Officer (whom has since resigned) , with a plea for his intervention into the situation (**Exhibit Q**).

12. This unbroken chain of events culminated in the termination/firing of the plaintiff.

13. On December 2, 2012, while on medically-excused excused absence from work, plaintiff was notified by Khan, via plaintiff personal email account, that her

employment with ID had ended (days earlier) on November 30, 2012. Plaintiff's position, according to Khan, had been eliminated due to an economic reduction-in-force (RIF) within Khan's department. **(Exhibit R)**.

14. There was no notice of an economic RIF, layoffs, downsizing or rightsizing prior to the plaintiff's authorized leave.

15. Respondent increased their workforce as evidenced by more than 30 position postings (IDI Requisitions Numbers 2521 thru 2549) 30 -45 days following plaintiff's termination along with a posting on Craigslist for a Proposal Coordinator **(Exhibit S)**.

16. Other coworkers retained over plaintiff had neither, greater skills, or had been ranked higher that plaintiff in terms of subject matter expertise and plaintiff had more tenure than at least three other coworkers retained in the Bids & Proposal department.

17. On December 14 and December 17, 2012, plaintiff received an e-mail from Ms. Edith Hughes, Payroll and Facilities Manager, asking plaintiff to meet her at a location in Manassas to retrieve her personal belongings **(Exhibit T)**.

18. That, this was one of the hardest times of the plaintiff's life. She felt reduced to slavery.

19. In March of 2013, Plaintiff filed a complaint with the U.S EEOC.  EEOC Case Number: 570-2013-00959 is pending investigation. **(Exhibit U)**

20. Plaintiff filed a complaint with the Department of Labor for Interference and Retaliation with the Family Medical Leave Act **(Exhibit V)**.

## COUNT I: Negligent Infliction of Emotional Distress (NIED)

A cause of action for negligent infliction of emotional distress (NIED) consists when (1), a duty of care owed by the defendant to the plaintiff; (2), breach of that duty by the defendant resulting in severe emotional suffering and (3), actual and proximate causation of severe emotional distress suffered and are more than mere triggers, more than contributing factors, and more than the first event in an attenuated chain.

Under the doctrine of NIED, if the actor's conduct is negligent and violates a duty of care to protect another from freight or other emotional disturbance. The fact that the harm results solely from internal operations does not protect the actor from liability; therefore, plaintiff is entitled to recover for the entire negative impact on her psyche caused by defendant's conduct.

**Causation.** Cause in Fact: "but-for test." Substantial factor arises when it's difficult to determine if defendant is a "but for" cause. The three prong test is meant when it is established that (1), defendant's actions was a "but for" cause of the injury; (2), negligence was casually linked to the harm; and (3), defendant's action or omission was proximately linked to injury.

**Joint and Several Liability** occurs when two or more defendants are engaged in conduct resulting in a single, indivisible harm to another. Plaintiff asserts that defendants Khan, Pond and Mayer acted jointly (joint tortfeasors), in concert together, causing injury to plaintiff by turning a blind eye to her, using economic layoff as a smokescreen to cover up for their illegal activities.

**Vicarious Liability.** Under the doctrine of respondeat superior, an employer is vicariously liable for torts committed by employees while acting within the scope of their employment. The doctrine is based on the theory that the employee acts on behalf of

the employer when the employee is within the scope of his or her employment. In order to succeed on the theory of respondeat superior, a plaintiff must show that the employer controlled or had the right to control the actions of its purported employee. The employer is liable if the employee's conduct was motivated by intent to serve the employer's interests and connected to acts the employee was authorized to perform. In such situations, the employer is vicariously liable for the employee's negligent acts. The Supreme Court, in Faragher and Ellerth, reasoned that vicarious liability for supervisors is appropriate because supervisors are aided in such misconduct by the authority that the employers delegates to them. The three prong test includes: (1), employee's conduct must be of the general kind the employee is hired to perform (2), employee's conduct must occur substantially within the hours and ordinary spatial boundaries of employment and (3), conduct must be motivated by serving employer's interest

Plaintiff asserts that respondent's calculated efforts to pressure plaintiff into resignation (to avoid paying unemployment insurance and increased premiums) through a history of friction with Mayer exceeded what a person would consider to be appropriate and reasonable in the performance of work.

**Proximate Cause** measures whether the tortfeasors should have reasonably foreseen, as a risk of their conduct, the general consequences or a type of harm suffered by the plaintiff. Plaintiff asserts that tortfeasors were the direct cause of her harm and the proximate cause of most foreseeable results.

Mishandling of plaintiff's complaint falls within the purview of the Industrial Commission as an 'injury' recognized by the Workers' Compensation Act. "...'injury arose out of the employment in that complaining to an employer about harassment at

work and the risk that the employer may not handle it properly is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment.'" "...injury was sustained in the course of employment." *Shaw v. The Goodyear Tire & Rubber Co., North Carolina Court of Appeals, No. 09 CVS 11872 (1/15/13).*

**WHEREFORE,** Plaintiff Janece P. Mickens, claim monetary damages against the Defendant in an amount to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## Count II – Wrongful Discharge

In order to establish a case of wrongful termination, the employee must prove by a Preponderance of the evidence that (1) her employer terminated her; (2) her termination violated a clear mandate of public policy; and (3) there is a causal nexus between the employee's conduct and the employer's decision to fire the employee.

Under Virginia law, an employee may bring a claim for wrongful discharge in violation of public policy if: (1) an employer violated a public policy enabling the exercise of an employee's statutorily created right; (2) the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection in the statute; or (3) the discharge was based on the employee's refusal to engage in a criminal act..

In Virginia, if a plaintiff has a federal remedy for the harm imposed, that federal remedy does not preclude a wrongful discharge claim, if there is no other state remedy. See Lockhart, 439 S.E.2d 31 at 332. Identifying a federal statute is not sufficient. Statutes that were enacted to protect the property rights, personal freedoms, health, safety, or welfare of the general public, but do not expressly state a public policy, may also support a wrongful discharge claim. City of Virginia Beach 34 v. Harris, 523 S.E. 2d 239, 245 (Va. 2000).

During her employment, plaintiff complained to the appropriate personnel about her supervisor's obnoxious and rude behavior toward her. Her harassment was verbal and intimidating. Despite three (3) complaints, the supervisor remained in her position and continued to harass her. Eventually, defendant terminated plaintiff's employment.

## COUNT III. Family Medical Leave Act (FMLA) Interference

Plaintiff engaged in a protected activity when she filed a complaint against her immediate supervisor, Ms. Susan Mayer in her capacity as Sr. Director, Proposal & Capture Management; that, resulted in emotional distress arising from harassment that caused plaintiff severe anxiety, impairment in focus, concentration, alertness, and mood whereby prevented plaintiff from working. The plaintiff began asserting her FMLA rights directly notifying: defendant-employees, Ms. Theresa (Terri) Pond in her capacity as Vice President, Human Capital & Corporate Development, Mayer, and Mr. Zaman Khan in his capacity as Executive Vice President, Business Development. Even though plaintiff did not specifically request FMLA leave by name, the employer was provided with sufficient evidence to at the very least to make certain inquiries of plaintiff to

ascertain if her condition qualified for FMLA protection, instead plaintiff was fired on November 30, 2012.

District Courts in the Seventh Circuit consider "interference" to include violating the FMLA, refusing to give FMLA leave, discouraging an employee from taking FMLA, and manipulating the workforce to avoid FMLA responsibilities. To make a prima facie case of FMLA interference theory, plaintiff must establish that (i) she was an eligible employee; (ii defendant is an employer as defined under the FMLA; (iii) she was entitled to leave under the FMLA; (iv) she gave notice of her intent to take FMLA leave; and (v) she was denied the FMLA benefits to which she was entitled. Applying Greenwell v. Charles Mach. Works Inc. 2011 WL 1458565, to make a prima facie claim for FMLA interference, plaintiff must establish: (i) that she was entitled to FMLA leave (ii) that some adverse action by defendant interfered with her right to take FMLA leave; and (iii) that defendant's actions were related to the exercise or attempted exercise of her FMLA rights.

In Dollar v. Smithway Motor Express, Inc. 2011 WL 1399800 (N.D. Iowa April 13, 2011), plaintiff claimed that her employer retaliated against her and interfered with her FMLA rights. At the time of her discharge, plaintiff was eligible for FMLA protected leave. Regarding plaintiff's interference claim, the court first explained that plaintiff provided adequate notice of her need to leave because her absences were clearly for an FMLA-qualifying reason, which she communicated to defendant. Next, the court concluded that when she notified her supervisor that she needed time off due to her qualifying serious health condition, she should have been given time off under the

FMLA, but was instead fired; thus, according to the court, interfered with plaintiff's FMLA rights.

In support of her interference claim, plaintiff contends that her former position had not in fact been eliminated. Her primary job function supplied an operational sales service that the employer was not winding down.

### COUNT IV. Family Medical Leave Act Retaliation

The fact that an employer has a legal right to terminate employment in such cases is not a complete defense to a retaliation claims, as unlawful consideration may have, never the less, played a role. FMLA retaliation claim requires a plaintiff to show adverse action relating to her engagement in a statutorily protected activity. The standard articulated in Burlington Northern Santa Fe Railroad Co v. White, 548, U.S. 53; an action is materially adverse when it "would have been likely to dissuade or deter a reasonable worker in plaintiff's position from exercising his/her legal rights." Plaintiff asserts that the defendant failed to follow its own leave-related policies by not taking any action, whatsoever, toward issuing paperwork for FMLA leave; even, after the employer was well-aware of employee's incapacitation. The Third Circuit has articulated two primary factors relevant to establishing a causal connection between the use of FMLA and an adverse employment action: (i) timing and (ii) ongoing antagonism. Coupled with the temporal proximity between plaintiff's workplace harassment complaint against her supervisor and her plan to be out of the office and the decision to terminate her employment – just over one week – creates an inference of causation. In the Tenth Circuit, temporal proximity can satisfy the causation requirement if the protected activity and termination are close enough in time; thus, a genuine issue of material fact exists

regarding whether plaintiff was truly discharged due to downsizing or whether defendant's stated reason for her termination was pretext.

**WHEREFORE,** Plaintiff Janece P. Mickens, claim monetary damages against the Defendant in an amount to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

### DEMAND FOR JURY

Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted,

*Janece P. Mickens*
Janece P. Mickens
12837 Rannoch Forest Circle
Bristow, Virginia 20136
Phone: 703-656-8129
Email: janecemickens@yahoo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing **COMPLAINT (INCLUDING EXHIBITS) , NOTICE OF LAWSUIT AND REQUEST FOR WAIVER SERVICES OF SUMMONS FORM** was mailed this 1st$^d$ day of November to Intelligent Decisions; defendants, Mr. Zaman Khan, Ms. Theresa Pond and Ms. Susan Mayer at 21145 Beaumeade Circle, Ashburn, Virginia 20147

*Janece P. Mickens*
Janece P. Mickens
12837 Rannoch Forest Circle
Bristow, Virginia 20136
Phone: 703-656-8129
Email: janecemickens@yahoo.com